IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FRED D. WHITESIDES, | ) | |
| | ) | |
| Plaintiff, | ) | 4:06CV3037 |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT RYE, JIM ERIKSEN, RICHARD | ) | MEMORANDUM AND ORDER ON |
| HARTMAN, PAMELA E. LANCASTER, | ) | DEFENDANTS' MOTION FOR |
| WILLIAM JEFFRIES, ROBERT | ) | SUMMARY JUDGMENT |
| HUMISTON JR., SCOTT ARNOLD, | ) | |
| DAVID L. ARNOLD, and LONNIE | ) | |
| LOGAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On March 2, 2006, the plaintiff, Fred D. Whitesides, filed a five-count amended complaint against Defendants Robert Rye, Jim Eriksen, Richard Hartman, Pamela E. Lancaster, William (Bud) Jeffries, Robert Humiston, Jr., Scott Arnold, and Lonnie Logan, who "[c]ompris[e] the Hall County, Nebraska, Board of Supervisors"; "The Department of Corrections"; and David L. Arnold.  (See generally Am. Compl., filing 5.)  The defendants moved to dismiss the amended complaint, (see filing 18), and their motion was granted in part, (see filing 32).  Specifically, Defendants Hall County, Nebraska, Board of Supervisors and the Department of Corrections were dismissed from the action; three counts were dismissed in their entirety; and the two remaining counts were dismissed insofar as the remaining defendants were sued in their official capacities.  (See filing 32.)  Defendants Robert Rye; Jim Eriksen; Richard Hartman; Pamela E. Lancaster; William (Bud) Jeffries; Robert Humiston, Jr.; Scott Arnold; Lonnie Logan; and David L. Arnold (hereinafter "the defendants") have moved for summary judgment on the remaining counts.  (See filing 46.)  For the following reasons, I find that the defendants' motion must be granted.

1

## I.   BACKGROUND[1]

---

[1]The facts set forth in this section are taken from the statements of material facts that have been submitted by the parties. (See Defs.' Br., filing 48, at 2-10; Pl.'s Br., filing 53, at 2-20.) The parties' statements of facts, however, do not comply with the local rules regarding summary judgment motion practice. Local Rule 56.1(a)(2), which concerns the moving party's statement of facts, provides,

> The statement of facts shall consist of <u>short</u> numbered paragraphs, each containing <u>pinpoint references to affidavits</u>, pleadings, discovery responses, deposition testimony (by page and line), or other materials relied upon to support the material facts recited in that paragraph. . . . <u>Failure to provide citations to the exact locations in the record supporting the factual allegations shall be grounds to deny the motion.</u>

NECivR 56.1(a)(2) (second emphasis added). The defendants' statement of facts does not consistently provide pinpoint references to affidavits, though I recognize that with few exceptions, page number references are lacking only when the affidavits cited are less than two full pages in length. (See, e.g., Defs.' Br., filing 48, Statement of Material Facts ¶ 2 (citing Aff. Of W.P. "Bud" Jeffries).)

Local Rule 56.1(b)(1) concerns the opposing party's response to the moving party's statement of facts. It states,

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, <u>in the case of any disagreement, contain pinpoint reference to affidavits</u>, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response.</u>

NECivR 56.1(b)(1) (first emphasis added). The plaintiff's response to the defendants' statement of facts is virtually devoid of pinpoint references to the affidavit upon which he relies, despite the fact that the substantive portion of this affidavit spans eight full pages. (See Pl.'s Br., filing 53, at 2-20; see also Whitesides Aff., filing 54.) Moreover, the plaintiff has responded to some of the defendants' statements with simple denials that are unsupported by references to any affidavits, pleadings, or other materials. (See, e.g., Pl.'s Br., filing 53, Statement of Material Facts ¶¶ 24, 26, 27.) These unsupported denials are insufficient to raise a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

Although I have excused the parties' failures to provide pinpoint references to their

The plaintiff was employed by the Hall County Department of Corrections as a corrections officer from October 1988 until his termination on April 19, 2002. Defendant David Arnold "served as the director of the Hall County Department of Corrections under the general supervision of the Hall County Board of Corrections from March . . . 2002 to March . . . 2006." (Defs.' Br., filing 48, Statement of Material Facts ¶ 15.) The Hall County Board of Corrections is composed of the members of the Hall County Board of Supervisors. At relevant times, the members of the Hall County Board of Supervisors were Defendants Jeffries, Scott Arnold, Humiston, Lancaster, Hartman, Rye, Erikson, and Logan.

In February 2002, a female inmate reported that the plaintiff "engaged in sexual contact with her on multiple occasions" and "physically touched her on numerous other occasions." (Defs.' Br., filing 48, Statement of Material Facts ¶ 23.) Two other female inmates submitted written reports that corroborated these allegations. Following an investigation,[2] David Arnold concluded that there were reasonable grounds to believe that the plaintiff engaged in improper physical contact with a female inmate while on duty. On February 27, 2002, David Arnold placed the plaintiff on administrative leave with pay. Sometime thereafter, David Arnold informed the members of the Board of Supervisors that he intended to terminate the plaintiff's employment.

In a letter dated April 19, 2002, David Arnold informed the plaintiff that his employment would be terminated as of 5:00 p.m. on that same day. The letter states, in part, as follows:

> Based upon my investigation, there is information to suggest that in November and December 2001, you violated the following provisions of the Hall County Department of Corrections Standard Operating Policy and Procedure Manual:
>
>     1.    Failure to maintain a professional demeanor in contacts with inmates and the public, and in particular a female inmate of the Hall County Jail, in

---

affidavits, the parties should study the local rules of this court and comply with them in the future.

[2]The parties agree that an investigation was conducted by the Hall County Sheriff. (See Pl.'s Br., filing 53, Statement of Material Facts ¶ 38.) The plaintiff states that an investigation was also conducted on behalf of the Department of Corrections by a Todd Wink. (See id. ¶ 25.)

>    violation of the Standard Operating Procedure HCDC-3A-02-F(1);
>
>    2.   Engaging in personal contact in violation of Standard Operating Procedure HCDC-3A-02-F(7); and
>
>    3.   Fraternization in violation of Standard Operating Procedure HCDC-3A-02-H(3).
>
> Whether these allegations are true or not, in my judgement, the good of the Department, its order and efficiency, require that I terminate your employment. I do not consider this a disciplinary action per se as I have made no findings or determinations with regard to the allegations made.

(Filing 47, Ex. 9-C, at 2.)

A union grievance was filed in protest of the plaintiff's termination. (See filing 47, Ex. 9-E.) David Arnold denied the grievance, (see id. Ex. 9-F), and the union notified David Arnold of its intention to appeal his decision, (see id. Ex. 9-G). An appeal hearing was scheduled; however, the hearing was continued at the plaintiff's request, and neither the union nor the plaintiff requested that the hearing be rescheduled.

The Hall County Sheriff investigated the "sexual contact" allegations against the plaintiff and submitted investigative reports and witness statements to the Hall County Attorney's office. After reviewing these materials, County Attorney Jerom Janulewicz, Chief Deputy County Attorney Mark Young, and Deputy County Attorney Michelle Oldham decided to charge the plaintiff with two counts of sexual assault on an inmate in violation of Revised Statute of Nebraska section 28-322.01. There is no evidence that any defendant influenced or attempted to influence the decision to prosecute the plaintiff.

The plaintiff pleaded not guilty to the charges, and a jury trial commenced on or about January 5, 2004. (See filing 47, Ex. 12-A.) On January 9, 2004, the jury returned a verdict of not guilty on all counts. (See id.)

It is undisputed that female corrections officers have been terminated from their employment with the Hall County Department of Corrections for engaging in "improper relations" with male inmates. However, it appears that no female officer has been prosecuted in the wake of such a termination.

## II. STANDARD OF REVIEW

A motion for summary judgment shall be granted by the court when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. Id. In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, and "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 256 (citing Federal Rule of Civil Procedure 56(e)).

## III. ANALYSIS

The defendants argue that they are entitled to summary judgment on the claims set forth in Counts I and V of the amended complaint.[3] My analysis of the defendants' arguments is set forth below.

### A. Count I

Count I of the amended complaint alleges that the defendants engaged in a conspiracy in violation of 42 U.S.C. § 1983. (See Am. Compl., filing 5, ¶ 24-27.) More specifically, the complaint states,

> 25. Knowing that no probable cause existed to terminate Plaintiff and to

---

[3]The plaintiff's other claims have been dismissed, and the claims set forth in Counts I and V have been dismissed insofar as they were brought against the defendants in their official capacities. (See filing 32.)

>seek his arrest and prosecution or recklessly disregarding the fact that no probable cause existed to terminate Plaintiff and to seek his arrest and prosecution, all Defendants, nevertheless, engaged in the above-described cover-up of omissions and mistakes to effect the termination[,] . . . arrest, incarceration and prosecution of Plaintiff.
>
>26.   By the actions and conduct described above, in violation of the Fourth and Fourteenth Amendments to the United States Constitution and [42 U.S.C. § 1983], all Defendants conspired to and did deprive Plaintiff of his liberty and property without due process of law and conspired to and did effect his false arrest, incarceration, and prosecution.

(Am. Compl., filing 5, ¶¶ 25-26.)

The plaintiff argues that this claim "is based upon a violation of substantive due process under the Fourteenth Amendment and alleged arrest and seizure under the Fourth Amendment." (Pl.'s Br., filing 53, at 21.)  I shall study each basis of the plaintiff's claim to determine whether a genuine issue remains for trial and whether the defendants are entitled to judgment as a matter of law.

1.   Substantive Due Process

The plaintiff argues that his substantive due process claim is based upon Moran v. Clarke, 296 F.3d 638 (8th Cir. 2002) (en banc).  In Moran, a majority of judges concluded that "[i]n every case in which a plaintiff challenges the actions of an executive official under the substantive component of the Due Process Clause, he must demonstrate both that the official's conduct was conscience-shocking . . . and that the official violated one or more fundamental rights that are 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" Moran, 296 F.3d at 651 (Bye, J., concurring) (citations omitted); see also Slusarchuk v. Hoff, 346 F.3d 1178, 1181-82 & n. 2 (8th Cir. 2003) (noting that Judge Bye's opinion states the law in the Eighth Circuit on this issue).  I shall consider each of these elements in turn to determine whether the defendants are entitled to judgment as a matter of law on the plaintiff's substantive due process claim.

The plaintiff appears to argue that the defendants' actions violated his right to employment and his right to freedom from arrest, incarceration, and prosecution without

probable cause. (See Pl.'s Br., filing 53, at 21, 22; see also filing 27 at 14-16 (arguing that the right to engage in "any of the common occupations of life" is a fundamental right).) The defendants have not argued that these are not "fundamental rights" sufficient to form the basis of a substantive due process claim. Therefore, for the purposes of this memorandum, I shall assume that the plaintiff has alleged violations of "fundamental rights that are 'deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" Moran, 296 F.3d at 651 (Bye, J., concurring). I note in passing, however, that it is not obvious that the right to employment, or "occupational liberty," amounts to a "fundamental right" for the purposes of a substantive due process claim. Compare Moran, 296 F.3d at 645 (holding that the right "to engage, without unreasonable interference and harassment, in any of the common occupations of life" is a fundamental right) with Singleton v. Cecil, 176 F.3d 419, 428 (1999) (en banc) ("We agree with these circuits that the so-called '[o]ccupational liberty . . . is not protected by substantive due process. . . .'").

It remains to be determined whether, in light of the evidentiary materials submitted by the parties, a rational jury could conclude that the defendants infringed the plaintiff's fundamental rights in a manner shocking to the conscience.

> In striking the substantive due process balance, the question "is not simply whether a liberty interest has been infringed but whether the extent or nature of the [infringement] . . . is such as to violate due process." It is a question of degree. In general, substantive due process "is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it [sic] amounted to a brutal and inhumane abuse of official power literally shocking to the conscience."

Moran, 296 F.3d at 647 (quoting In re Scott County Master Docket, 672 F. Supp. 1152, 1166 (D. Minn. 1987)). Whether particular conduct is "conscience-shocking" for the purposes of a substantive due process analysis depends upon the circumstances in a given case. See County of Sacramento v. Lewis, 523 U.S. 833, 848-51 (1998). It is clear, however, that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process," id. at 849, and "conduct intended to injure in some way unjustifiable by any government interest

7

is the sort of official action most likely to rise to the conscience-shocking level," Moran, 296 F.3d at 647 (quoting Lewis, 523 U.S. at 849).

I find that, based upon the evidentiary materials submitted by the parties, no reasonable juror could conclude that any defendant engaged in conscience-shocking conduct that violated the plaintiff's right to be free from arrest, incarceration, and prosecution without probable cause. Indeed, it is undisputed that the decisions to arrest, incarcerate, and prosecute the plaintiff were made by the Hall County Attorney's office without the involvement or influence of the defendants. (See Defs.' Br., filing 48, Statement of Material Facts ¶¶ 38-44, 47-59; Pl.'s Br., filing 53, Statement of Material Facts ¶¶ 38-44, 47-59.) Therefore, insofar as the plaintiff's substantive due process claim is based upon allegations that the defendants violated his right to be free from arrest, incarceration, and prosecution without probable cause, the defendants are entitled to judgment as a matter of law.

I also find that no reasonable jury could conclude that the defendants' decision to terminate the plaintiff was conscience-shocking. As I noted above, the plaintiff has argued that his substantive due process claim is based upon Moran v. Clarke, 296 F.3d 638 (8th Cir. 2002) (en banc). In Moran, the Eighth Circuit found that the plaintiff's case warranted submission to a jury, stating,

> [The plaintiff] introduced evidence that tends to show a police department that publically and financially committed itself to producing a culprit for an alleged wrongdoing before any such wrongdoing was actually established. He produced proof of questionable procedures, of pressures placed on officers to incriminate a specific person or corroborate the department's official line, of a hasty condemnation of Moran and of improper consideration of his race. Moreover, he offered proof that, at various times, certain defendants purposely ignored evidence that strongly tended to exonerate him. In short, drawing all inferences in his favor, a reasonable jury could conclude that some or all of the defendants intentionally set up an innocent Moran for patently arbitrary reasons.

Moran, 296 F.3d at 647-48. In this case, in contrast, there is no genuine dispute that a female inmate accused the plaintiff of engaging in sexual contact with her on more than one occasion; that two other female inmates corroborated this report; that David Arnold decided to terminate the plaintiff's employment based upon the inmate's allegations and other instances of misconduct involving the plaintiff; and that the plaintiff filed a grievance concerning his termination, but did

8

not follow through with an appeal of the denial of that grievance.  (See Defs.' Br., filing 48, Statement of Material Facts ¶¶ 23, 24, 30, 33-37; Pl.'s Br., filing 53, Statement of Material Facts ¶¶ 23, 24, 30, 33-37.)  Under these circumstances, there is simply no evidence of the sort of severe, disproportionate violation of the right to employment (assuming such a fundamental right exists) that amounts to "a brutal and inhumane abuse of official power literally shocking to the conscience."  Moran, 296 F.3d at 647 (quoting In re Scott County Master Docket, 672 F. Supp. at 1166).

       The plaintiff has submitted an argument in opposition to the defendants' motion for summary judgment, though it appears to be tailored to support the plaintiff's Fourth Amendment claim rather than his substantive due process claim.  (See Pl.'s Br., filing 53, at 21-28.)  Indeed, the plaintiff's argument does not appear to address his substantive due process claim at all insofar as the claim is based upon "occupational liberty."  In addition, I find the plaintiff's arguments to be difficult to follow, and points of fact are often lacking adequate support.  For example, the plaintiff argues,

> We believe the evidence in this case will show that the incident which led to the eventual prosecution of the Plaintiff begins with a correspondence from . . . an inmate at the Hall County Corrections Center.  Instead of initially questioning why [the inmate] would make an accusation against the Plaintiff, who was, of course, a Corrections Officer, the Defendant, David Arnold, assumed the correspondence was factual and engaged his Deputy to conduct an investigation.

(Pl.'s Br., filing 53, at 25.)  The plaintiff's suggestion that David Arnold did not question the inmate's motives and assumed that her "correspondence was factual" lacks foundation.  Moreover, to the extent that the plaintiff means to suggest that David Arnold's decision to deem the inmate's complaint worthy of investigation is a conscience-shocking abuse of power, I find that his argument does not merit submission to a jury.[4]

---

[4]The plaintiff's brief also cites a document that appears to be a newspaper article (but has not been included in an index of evidence) in support of an argument that the plaintiff "was arrested, appeared in Court in prison attire, was allowed to be extensively photographed . . . and was held in custody until bond was posted" wrongfully.  (See Pl.'s Br., filing 53, at 27.)  The argument is wholly lacking in foundation, and it is not clear that it is directed toward individuals who are defendants in this case.  Nevertheless, the plaintiff adds, "The arrest and detention of the Plaintiff can be analogized to other Defendants, including, of course, the Defendant, David L.

9

Although I am under no obligation "to wade through and search the entire record for some specific facts that might support the [plaintiff's] claim," White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990) (quoting InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)), I have studied the plaintiff's affidavit, and I take it that the theory underlying the plaintiff's substantive due process claim is that Assistant Director Todd Wink, who is not a defendant in this case, did not like the plaintiff and wanted him "run off." (See filing 54, Whitesides Aff. at 4.) According to the plaintiff, a series of bogus misconduct allegations were raised against him, (see id. at 2-10), and Mr. Wink was directly responsible for investigating each of these allegations, (see id. at 2-7). The plaintiff claims that because Wink's investigation of the sexual contact allegations, which was the last in a series of harassing investigations, led to "the arrest and seizure of the Plaintiff," the defendants violated his substantive due process rights. (Pl.'s Br., filing 53, at 26; see also id. at 27-28 ("We believe that the conduct of the Defendants violated . . . the Plaintiff's guarantee of substantive due process . . . .").) However, even if the plaintiff's allegations are taken to be true, there is no evidence that any named defendant interfered with the plaintiff's fundamental rights to "occupational liberty" and freedom from arrest, incarceration, and prosecution in a manner that shocks the conscience. See Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."). In fact, it appears that the only allegation that a named defendant violated one of these fundamental rights is directed at David Arnold, who merely "ordered and allowed" a Wink's investigation of a corroborated sexual contact complaint against the plaintiff despite knowing that Wink was "antagonistic" toward the plaintiff. (See filing 54, Whitesides Aff. at 10, see also id. at 4, 6.)

The facts of this case are not analogous to the conscience-shocking conduct described in Moran. I find that there is no genuine issue for trial, and the defendants are entitled to judgment as a matter of law on the plaintiff's substantive due process claim.

---

Arnold, who were allowed to enter their appearances without arrest and notoriety." (Id.) It appears that the plaintiff means to say that the defendants in this civil action received better treatment than did the plaintiff in his criminal case because here the defendants were allowed to answer the complaint without having been arrested; however, I confess that the plaintiff's argument does not appear to be relevant.

10

2.  Fourth Amendment

The plaintiff argues that the defendants "subjected [him] to an illegal arrest and seizure which constitutes a violation of the Fourth Amendment." (Pl.'s Br., filing 53, at 22.) It may be that a claim based upon an alleged violation of the right to be free from prosecution without probable cause can be brought under the Fourth Amendment. See Albright v. Oliver, 510 U.S. 266, 268, 271, 274-75 (1994). However, "[t]he Fourth Amendment covers only 'searches and seizures,'" County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998), and in this case there is no genuine dispute that none of the defendants had any connection with the decisions to charge, arrest, and prosecute the plaintiff. I find that the defendants are entitled to judgment as a matter of law on the plaintiff's Fourth Amendment claim.

In sum, the defendants have met the initial burden of establishing that there is no genuine issue for trial related to Count I of the amended complaint, but the plaintiff has failed to produce evidence that there is, in fact, a genuine issue for trial. I find therefore that the defendants are entitled to summary judgment on Count I of the amended complaint.

### B.  Count V

Count V is based upon allegations that the defendants engaged in sexual discrimination against the plaintiff in violation of 42 U.S.C. § 1983. (See Am. Compl., filing 5, ¶¶ 1, 39-44.) "[I]ntentional gender discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment and is actionable under § 1983." Ottman v. City of Independence, Mo., 341 F.3d 751, 756 (8th Cir. 2003). If there is no direct evidence of gender discrimination, discrimination may be established using the McDonnell Douglas burden-shifting analysis. See id.; see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Under the burden-shifting analysis, a plaintiff must first establish a prima facie case of gender discrimination by showing that "(1) []he was a member of a protected group; (2) []he was qualified to perform [his] job; (3) []he suffered an adverse employment action; and (4) []he was treated differently from similarly situated [females]." Tenge v. Phillips Modern Ag Co., 446 F.3d 903, 910 (8th Cir. 2006) (citation omitted). "If a plaintiff can make out a prima facie case, the employer must then articulate a legitimate nondiscriminatory reason for its actions, and then it falls to the employee to demonstrate that the reason was simply a pretext for

discrimination." Id. (citation omitted).

In this case, there is no direct evidence of intentional gender discrimination, and the plaintiff has attempted to establish discrimination using the McDonnell Douglas burden-shifting framework. (See Pl.'s Br., filing 53, at 33.) The defendants argue that the plaintiff cannot establish that he was treated differently from a similarly situated female corrections officer, which is an essential element of the plaintiff's prima facie case. I agree. It is undisputed that female corrections officers employed by the Hall County Department of Corrections who have engaged in sexual contact with inmates have either resigned or have been terminated. (See Defs.' Br., filing 48, Statement of Material Facts ¶ 45; Pl.'s Br., filing 53, Statement of Material Facts ¶ 45; see also Pl.'s Br., filing 53, at 29 ("There would seem to be little factual dispute that there were past instances of sexual misconduct by female Corrections Officers at the Hall County Jail who were then terminated or allowed to resign.").) Furthermore, there is no evidence that a female corrections officer has been allowed to continue her employment after having been accused of engaging in sexual contact with an inmate. It is also undisputed that the plaintiff chose not to resign his employment when he was confronted with allegations that he engaged in sexual contact with an inmate; instead, he has denied the allegations, and he filed a grievance in response to his termination. (See Pl.'s Br., filing 53, Statement of Material Facts ¶¶ 23-27, 30, 32-37; see also filing 47, Ex. 9, David Arnold Aff. at 5.) Since the plaintiff has failed to identify any similarly-situated female who received more favorable treatment from the defendants, he cannot establish a prima facie case of gender discrimination.

The plaintiff argues that the female corrections officers who either resigned or were terminated when confronted with allegations of sexual contact received favorable treatment because they were not prosecuted. (See Pl.'s Br., filing 53, at 29-33.) As I have noted previously, however, it is undisputed that the defendants had no involvement or influence in the decision to prosecute the plaintiff.

In view of the foregoing, I find that there is no genuine issue for trial, and the defendants are entitled to summary judgment on Count V of the amended complaint.

**IT IS ORDERED** that the defendants' motion for summary judgment, filing 46, is granted.

Dated November 27, 2006.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge